IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TASHA RUSSELL** | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| **ONESOURCE VIRTUAL, INC.** | § § § | |
| *Defendant*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Tasha Russell ("Plaintiff" or "Russell"), files this Original Complaint against Defendant OneSource Virtual, Inc., (collectively referred to as "Defendant" or "OneSource"), for violating federal law. The cause of action and summary of claims relating thereto are addressed below:

### I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Tasha Russell is currently a citizen and resident of the State of Texas.

2. Defendant OneSource Virtual HR, Inc., is a corporation, authorized to do business, and is doing business, in the State of Texas with its main corporate headquarters in Dallas County, Texas. It can be served through its registered agent CT Corporation System located at 1999 Bryan St., Ste. 900, Dallas, TX 75201 or wherever it may be found.

3. The court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §1331 & §1343.  Venue exists in this district and division as detailed in 28 U.S.C. §1391, as the events forming the basis of suit occurred in Dallas, Texas.

## II. FACTUAL BACKGROUND

4. Russell commenced employment with OneSource in January 2017 as a Payroll Business Analyst.

5. Russell reported to Beth Kirk, Manager of Quality and Continuous Improvement, Payroll Services.

6. Russell is a non-Caucasian American female, having skin color and physical features that would place her in the commonly referred to classification of "Black" or "African-American." She possesses distinct racial features and ethnic characteristics that are different from Caucasian or "white" Americans.

7. Kirk is Caucasian or white.

8. A few months into Russell's employment, Kirk made numerous inappropriate sexual remarks to Russell, including but not limited to, 1) unwanted discussions about Kirk's sex life with her husband, 2) sexual comments about male co-workers, including that she would like to see them naked and discussions about what she wanted to do to them sexually. On one occasion, Kirk thanked a male co-worker for "looking good" on a conference call. This was one of the same male co-workers Kirk had previously made offensive sexual comments about to Russell.

9. These offensive sexual comments occurred at least once or twice a week.

10. Kirk would also make offensive racial remarks about Black women, including Russell. These comments include, but are not limited to, 1) comments about Black women's hair and how their hairstyles were not professional, 2) comments on Black women's body shapes, including the size of their buttocks, and 3) making an extremely offensive racial slur about a Black person when she referred to them as a "coon."

11. In addition to the racial comments, Kirk treated Black employees less favorably than non-Black employees. For example, Kirk showed clear favoritism over non-Black or Caucasian employees by allowing them to do minimal work with virtually no repercussions while Russell and her Black co-workers took on more work in addition to their own assigned tasks. Kirk scrutinized Russell and her Black co-workers' work more than non-Black or Caucasian employees.

12. In or about late October or early November 2017, Russell reported Kirk's offensive racial and sexual comments and behavior to Kirk's manager.

13. Russell was not the first employee to complain to OneSource management about Kirk's discriminatory behavior. Upon information and believe other OneSource employees reported or lodged complaints about what they believed was discrimination.

14. Prior to making her protected report, Russell was often praised for her performance and was even offered a promotion to a supervisor position, but after her report, it was clear that Kirk and her manager were fabricating performance issues in order to justify terminating Russell's employment.

15. Russell reported the discriminatory and retaliatory conduct to OneSource Human Resources on or about December 1, 2017.

16. On or about December 4, 2017, Kirk posted on Russell's public company profile and accused Russell of making accusations against her that were meant to harm Kirk.  Kirk also posted that Russell's reports made her angry. Kirk posted for the first time about Russell's alleged performance issues.  Posting these types of comments on an employees' public profile was unusual, as Kirk had not previously done this before.

17. After her report, Human Resources suggested the possibility of moving Russell to another department so that she no longer had to report to Kirk. Human Resources launched an investigation and told Russell to take time off until they reached a resolution. Russell gave Human

Resources her company-issued laptop and badge while she was on paid leave pending the investigation.

18. A few days later, another person in Human Resources presented Russell with a separation agreement, which included wavier of any claims against OneSource. Russell explained she had no intention to resign; she just wanted the discriminatory and retaliatory conduct to end. In response, Human Resources stated that she could return to work at OneSource, but she would still report to Kirk *and* she would also be placed on a Performance Improvement Plan, which contradicted the previous statement that she could move to another department away from Kirk. Russell took a copy of the proposed separation agreement to an attorney to better understand her options.

19. On or about December 11, 2017, Russell's attorney sent a letter to OneSource stating that Russell was preparing to file a Charge of Discrimination with the Equal Employment Opportunity Commission. Over the next few weeks, OneSource made minor changes to the separation agreement, but they ultimately could not reach an agreement on separation, so Russell anticipated a response from OneSource to return to work.

20. On December 22, 2017, Russell noticed her paycheck was short. She contacted OneSource regarding the shortage. OneSource communicated for the first time that it considered Russell had resigned as of December 8, 2017. Russell, through her attorney, responded that Russell never resigned. With full knowledge that Russell never intended to resign at any point, OneSource effectively terminated Russell's employment. Russell would not have been terminated (or constructively discharged) but for her reports of discrimination and retaliation and for her retaining an attorney to assist in filing a Charge of Discrimination with the EEOC.

### III. CAUSES OF ACTION: VIOLATION OF TITLE VII & 42 U.S.C. 1981

21. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 20 as if fully stated herein.

22. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§2000e *et. seq*. ("Title VII"), 42 U.S.C. §1981, and 42 U.S.C. §1981(a).

23. Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") against Defendant on or about December 28, 2017. Russell received A Notice of Right to Sue from the EEOC on September 16, 2020. This lawsuit was filed within ninety (90) days of receipt of the "Dismissal and Notice of Rights" issued by the EEOC.

24. Defendant is considered to be an "employer" as defined by Title VII.

25. Plaintiff is considered to be an "employee" as defined by Title VII.

26. Plaintiff's claims of discrimination, and/or retaliation pursuant to contract under 42 U.S.C. §1981 and 42 U.S.C. §1981(a), are brought pursuant to the requirements and obligations of those statutes and 42 U.S.C. §1983.

27. During the time that Plaintiff was employed by Defendant, she was subjected to severe or pervasive sexual harassment, racial harassment and disparate treatment, and retaliation, as defined by Title VII and §1981. These actions created a hostile-work environment, affected the terms and conditions of Plaintiff's employment, and ultimately led to her termination or constrictive discharge by Defendant.

28. As described above, Defendant intentionally and willfully violated Title VII and §1981 by subjecting Plaintiff to sexual harassment, racial harassment and disparate treatment, and retaliation because she engaged in protected activity as described by Title VII and §1981.

29.  Defendant does not have adequate policies or procedures in place to address the harassment, discrimination, or retaliation, nor did they implement prompt remedial measures.

30.  As a result of Defendant's violations of Title VII and §1981, (as mentioned above), Plaintiff has suffered actual damages in the form of lost wages and benefits. Plaintiff has also suffered mental trauma, loss of enjoyment of life, and other losses.

31.  As a result of the willful and intentional violations of Title VII, Plaintiff requests that she be awarded all actual, compensatory, and punitive damages to which she is entitled, equitable and/or injunctive relief, and attorney fees and costs.

## IV. JURY DEMAND

Plaintiff requests a trial by jury on all claims.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that on final trial, Plaintiff has judgment against Defendant as follows:

a.  Judgment against Defendant for actual damages, including lost wages and benefits, the sum to be determined at time of trial;

b.  Judgment against Defendant for compensatory damages, (including, but not limited to, mental anguish and loss of enjoyment of life), in the maximum amount allowed by law;

c.  Judgment against Defendant for punitive damages in the maximum amount allowed under law;

d.  An order that Defendant take such other and further actions as may be necessary to redress Defendant's violation of Title VII, including injunctive relief;

e.  Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f.  Costs of suit, including attorney's fees and other costs; and

g.  The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted by:

*/s/ Megan Dixon*
**Megan Dixon**
State Bar No. 24079901
dixon@l-b-law.com
**BRAZIEL | DIXON, LLP**
1910 Pacific Ave. Ste. 12000
Box 220
Dallas, Texas 75201
Tel: (214) 749-1400
Fax: (214) 749-1010

**ATTORNEY FOR PLAINTIFF**